UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY MERLE WOLF, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:21-CV-221 JMB |
| | ) |
| KELLY MORRISS, | ) |
| | ) |
| Respondent. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court upon the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed by Timothy Merle Wolf, Jr. *See* 28 U.S.C. § 1915(a). Because it appears that petitioner has not fully presented his claims to the Missouri courts, the petition will be dismissed for failure to exhaust available state remedies. 28 U.S.C. § 2254(b)(1)(A); Rule 4 of the Rules Governing Habeas Corpus Cases Under § 2254.

**Petitioner's Criminal Background in Federal Court**

On January 29, 2010, in front of the Honorable Henry Edward Autrey, petitioner plead guilty to possession of pseudoephedrine with intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(1) and punishable under 21 U.S.C. § 841(c). *United States v. Wolf,* No. 4:09CR707 HEA (E.D.Mo). On April 27, 2010, the Court sentenced petitioner to a total term of 87 months' imprisonment and two years of supervised release. *Id.*

Supervision of petitioner commenced on July 1, 2015. On January 15, 2016, a report was filed by his United States Probation Officer requesting that his substance abuse counseling condition be suspended. It was reported that petitioner had successfully completed the Residential Drug Abuse Program during his incarceration, and he had, since his release from confinement, continued to maintain full-time employment, negative urine specimens (for illicit substances), and

1

attended monthly Narcotics Anonymous groups. Thus, on that date, the condition that petitioner attend substance abuse counseling was suspended. *United States v. Wolf,* No. 4:09CR707 HEA (E.D.Mo).

On January 19, 2017, petitioner's United States Probation Officer reported that petitioner had violated his supervised release conditions by using methamphetamine. The Officer stated in his report:

> On January 7, 2017, this officer was contacted by the offender who indicated on January 6, 2017, his girlfriend Marivic Basas had died while they were using methamphetamine. The offender indicated they both had been using methamphetamine for two days. On the second day he woke up next to his girlfriend and observed she was not breathing. The offender called 911; emergency first responders responded to the call but were unable to revive Basas. The offender admitted that he had used methamphetamine on one previous occasion. This officer contacted the St. Charles County Sheriff's Department detective who handled this case and the investigation. The detective confirmed this information and indicated it did not appear the offender would be charged with any wrongdoing.
>
> Based on the offender's mental state related to the trauma of his girlfriend dying, and his relapse with controlled substances, it is requested a modification for mental health treatment be granted.

*Id.* Petitioner's Probation Officer additionally recommended having petitioner attend one individual integrated substance abuse/mental health counseling meeting a week and participate in random urine testing. Petitioner agreed to the proposed modifications and waived a hearing on the modified conditions. The Court ordered the change in conditions. *Id.*

On March 14, 2017, the United States Probation Officer in charge of petitioner's supervision recommended issuing a warrant for petitioner's arrest for three violations of the terms of his supervised release. The Officer stated:

> On January 7, 2017, this officer was contacted by the offender who indicated on January 6, 2017, his girlfriend Marivic Basas had died while they were using methamphetamine. The offender indicated they both had been using methamphetamine for two days. On the second day, he woke up next to his girlfriend and observed she was not breathing. First Responders responded to the

> call but were unable to revive Basas. The offender admitted he had used methamphetamine on one previous occasion.
>
> According to St. Charles County Detectives this is still an open death investigation and they are currently unable to provide any further information. As a result of this violation, the offender was provided with integrated treatment for dual disorders.
>
> On March 13, 2017, this officer made contact with the offender at the Wentzville Police Department. During this meeting, the offender admitted to continued use of methamphetamine. In addition, a glass vial of clear fluid was located in the offender's vehicle. When questioned about this vial, the offender indicated it was steroids that he had been using. The offender indicated he no longer uses this drug.
>
> On March 12, 2017, this officer attempted to make contact with the offender at his sister's residence, which was his reported address. The offender's sister indicated she had kicked the offender out of the residence due to erratic behavior. She indicated that she did not know where the offender was residing; however, she would try and get the offender to call this officer.
>
> On March 13, 2017, this officer met with the offender at the Wentzville Police Department. The offender indicated he had met a girl at the casino and has been staying at her house. The offender was unable to provide an address of this location. When asked where he was staying this evening, the offender indicated he would be staying at a hotel. The offender did not know which hotel he would be staying.
>
> When interviewed about this violation, the offender indicated that he had been staying at different locations with people that he has met. The offender indicated he was unable to provide any of these addresses. The offender did not provide a reason for not responding to messages left by this officer. As the offender is unable to provide a permanent address, this officer is unable to locate the offender when needed.
>
> The offender admitted that he has been using methamphetamine with friends for the last two months. In addition, the offender indicated he has not used in the last two weeks.

*United States v. Wolf,* No. 4:09CR707 HEA (E.D.Mo). On March 14, 2017, the District Court issued a warrant for petitioner's arrest.

On January 10, 2020, the United States Probation Officer in charge of petitioner's supervision filed a first amended petition for warrant or summons for offender under supervision. The Probation Officer sought a new warrant for petitioner's arrest based on the culmination of petitioner's criminal history in state court:

3

>   According to St. Charles County Circuit Court records, a probable cause statement was presented to the prosecuting attorney's office advising the offender, on or about January 6, 2017, knowingly caused the death of his 39 year old girlfriend by means of blunt force resulting in closed head trauma. The offender was the only person with the victim after 8:00pm on January 5, 2017. The victim's 16 year old daughter, last saw her eating dinner. The victim's 18 year old son, heard yelling and "loud thumps" between 1:00am and 4:00am, coming from the victim's, and the offender's room. The offender indicated he had an argument with the victim the evening of January 5, 2017. The offender and the victim's children admitted the relationship between them was volatile and they argued daily. The offender admitted that he used methamphetamine and steroids. A liquid steroid was seized from the master bathroom adjoining the offender's bedroom on January 6, 2017.
>
>   On April 3, 2018, the offender pled guilty to Involuntary Manslaughter on an Alford Plea. The St. Charles County Circuit Court case number is 1711-CR01215-01. The offender was sentenced to 7 years in Missouri Department of Corrections to run consecutively with docket numbers 1711-CR01319-01 and 1711-CR02748-01.

The warrant was executed on January 10, 2020, and on January 15, 2020, an order for application for writ of habeas corpus ad prosequendum was filed seeking to remove petitioner from Ozark Correctional Center in order to appear in the District Court.

Petitioner was charged with the following supervised release violations: (1) committing a federal, state, or local crime; (2) unlawfully possessing a controlled substance; (3) use of a controlled substance; (3) failure to submit to a drug test; (4) failure to refrain from use of alcohol and failure to purchase or distribute any controlled substances; (5) failure to notify his probation officer at least ten days prior to change in residence or employment; and (6) failure to refrain from associating with persons engaged in criminal activity. He plead guilty to charges (1-3) on February 6, 2020 and was sentenced to time served. *United States v. Wolf,* No. 4:09CR707 HEA (E.D.Mo). Petitioner was then returned to the custody of the State of Missouri.

**Petitioner's Criminal Background in State Court**

On April 5, 2017, a complaint was filed against petitioner in St. Charles County Court charging petitioner with murder in the second degree and possession of a controlled substance. *State v. Wolf*, No. 1711-CR01215 (11th Judicial Circuit, St. Charles County Court). The complaint

4

was based on a probable cause statement filed by Detective Mikki Morris, with the St. Charles County Police Department, which stated:

> On or about 1/06/2017 at 35 Hickory Ln, O'Fallon, MO 63366 in St. Charles County, MO Timothy M. Wolf, Jr. did knowingly cause the death of M.B., his 39 year old girlfriend, by means of blunt force resulting in closed head trauma.
>
> As documented in the medical examiner's report. Timothy M. Wolf, Jr. was the only person with M. B. after 8:00 pm., 01-05-2017, when M.B.'s 16 year old daughter, M.V.C., last saw her eating dinner, until 10:06 a.m., 01-06-2017, when paramedics arrived on scene. M.A.C., M.B.'s 18 year old son, heard yelling and "loud thumps" between 1:00 a.m.-4:00 a.m. 01-06-2017 coming from Timothy M. Wolf, Jr. and M.B.'s bedroom. Timothy M. Wolf, Jr. told law enforcement, he and M.B. had an argument the evening of 01-05-2017.
>
> Timothy M. Wolf, Jr., as well as M.B.'s children, admit the relationship between him and M.B. was volatile and they argued daily.
>
> Timothy, M. Wolf, Jr. is an admitted and known methamphetamine and steroid user. The liquid steroid was seized from the master bathroom adjoining Timothy M. Wolf, Jr.'s bedroom 01-06-2017.
>
> The lab report confirmed the substance to be: Methyldienolone.
>
> I have reasonable grounds to believe that the defendant will not appear upon the summons or is a danger to the crime victim, the community or any other person because:
>
> Timothy M. Wolf, Jr. has an extensive criminal history mostly for methamphetamine possession, distribution, and possession of methamphetamine precursors. He is currently incarcerated on a Probation Violation warrant. We are also awaiting lab results for an additional steroids charge. P&P is also considering additional violation charges.

*State v. Wolf*, No. 1711-CR01215 (11th Judicial Circuit, St. Charles County Court).

Petitioner was sentenced to seven (7) years in the Missouri Department of Corrections on April 3, 2018, after making an Alford plea to the charge of manslaughter. *State v. Wolf*, No. 1711-CR01215-01 (11th Judicial Circuit, St. Charles County Court). His sentence of imprisonment was to run consecutively with the sentences imposed in *State v. Wolf*, No. 1711-CR01319-01 (11th

5

Judicial Circuit, St. Charles County Court) and *State v. Wolf*, No. 1711-CR02748-01 (11th Judicial Circuit, St. Charles County Court).

On April 10, 2017, a complaint was filed against petitioner for possession of a controlled substance. *State v. Wolf,* No. 1711-01319 (11th Judicial Circuit, St. Charles County Court). The complaint was based on a probable cause statement filed by Sergeant Marshall, with the St. Charles County Police Department, which stated:

> On or about 03/13/2017 at 1019 Schroeder Parkway, Wentzville, MO in St. Charles County, MO, in the county of St. Charles, Wolf knowingly and unlawfully possessed Testosterone, a Schedule 3 controlled substance.
>
> Upon Wolf arriving for a meeting with his federal probation officer, TC, TC searched Wolf's vehicle which is a condition of Wolf's parole. The vehicle searched was Wolf's and there was no one else in the vehicle at the time of occurrence. When asked about the substance by TC, Wolf stated "it's Testosterone". TC advised this detective Wolf has no legal justification for possessing this controlled substance.
>
> The lab report confirmed the substance to be Testosterone.

*State v. Wolf,* No. 1711-01319 (11th Judicial Circuit, St. Charles County Court). Petitioner plead guilty on April 3, 2018, to possession of a controlled substance and was sentenced to six (7) years in the Missouri Department of Corrections to be served consecutive with the sentence imposed in *State v. Wolf*, No. 1711-CR01215-01 (11th Judicial Circuit, St. Charles County Court) and concurrent with the sentenced imposed in *State v. Wolf*, No. 1711-CR02748-01 (11th Judicial Circuit, St. Charles County Court).

On August 14, 2017, a complaint was filed against petitioner for felony stealing. *State v. Wolf*, No. 1711-CR02748 (11th Judicial Circuit, St. Charles County Court). The complaint was based on a probable cause statement filed by Zac Jenkins, an Investigator with the Special Investigations Criminal Unit of the Missouri Division of Employment Security, which stated:

> 1. I have probable cause to believe that from 03/04/17 through 03/25/17, Timothy Merle Wolf Jr. committed one or more criminal offenses, to wit the Class D felony

6

of Stealing by Deceit in violation of Section 570.030, R.S.Mo. Mr. Wolf is a white male, born on. . .and is 5'8 tall weighing 170 pounds with BLU eyes. Mr. Wolf committed this crime while living at 35 Hickory Lane,
O'Fallon, MO 63366.

2. Timothy Merle Wolf applied for and received unemployment insurance (UI) benefits while working for Superior Wreck Rebuilders. AT&T phone records for Wolf's telephone number (636) 219-8355 confim that Wolf accessed the Missouri Division of Employment Security (MODES) Interactive Voice Response (IVR) system via telephone for the week ending 03/04/ 17. According to Superior Wreck Rebuilders Wolf had worked 18.25 hours and earned gross wages totaling $182.00 for work he performed that week. Per MODES records when certifying his weekly claim for benefits Wolf reported to MODES that he had been unemployed the week ending 03/04/17 and had no earnings to report. Central Bank records confirm that Wolf subsequently received an additional $119.00 in UI benefits was not lawfully entitled. Wolf received his UI benefits onto Missouri Access MasterCard ending 9449 by Central Bank.

3. After becoming incarcerated in the St. Charles County Correctional Facility on 03/16/17, Wolf and his sister Tathany Ann Fritz, are heard on recorded telephone calls from the St. Charles County Correctional Facility conspiring together to unlawfully obtain UI benefits while Wolf remained in custody. With Wolf's permission Fritz used Wolf' personal identifying information (PII) including name, social security number, date of birth and personal identification number (PIN) to access Wolf's UI claim by telephone via the Interactive Voice Response (IVR) system. Sprint phone records for Fritz's telephone number (636-312-1226) confirm and by using Wolf's PII, Fritz accessed the MODES IVR system via telephone and filed two weekly UI claims for the weeks ending 03/18/17 & 03/25/17. When certifying the weekly claim for benefits Fritz certified that Wolf was able, available and searching for full-time work while he was incarcerated. Per Central Bank records Wolf and Fritz subsequently received additional UI benefits to which they were not lawfully entitled totaling $640.00. All UI funds were loaded onto Wolf's Missouri Access MasterCard ending 9449 by Central Bank.

4. The culmination of Wolf failing to report his gross weekly earnings for the week ending 03/04/17 by purporting that he was unemployed when in fact he had been working and the weekly certifications he conspired with Fritz to file weekly claims by certifying that he was able and available for work while incarcerated caused Wolf to unlawfully receive additional UI benefits that he was not lawfully entitled totaling $759.00.

5. During a face-to-face interview with Wolf on 05/26/17, at approximately 10:36 hours, after being advised of his Miranda Rights Wolf said he did not know if anyone had been filing weekly UI claims while he had been incarcerated. Wolf said he would look into it and get back to me. Wolf did not speak of any work he had done at Superior Wreck Rebuilders.

7

*State v. Wolf*, No. 1711-CR02748 (11th Judicial Circuit, St. Charles County Court). Petitioner plead guilty on April 3, 2018, to possession of a controlled substance and was sentenced to seven (7) years in the Missouri Department of Corrections to be served concurrent with the sentences imposed in *State v. Wolf*, No. 1711-CR01215-01 (11th Judicial Circuit, St. Charles County Court) and *State v. Wolf*, No. 1711-CR01319-01 (11th Judicial Circuit, St. Charles County Court).

On October 23, 2020, petitioner filed a post-conviction motion to vacate his sentences entered in Case Nos. 1711-CR-1215-01, 1319-01 and 02748-01. *Wolf v. State*, No. 2011-CC-1061 (11th Judicial Circuit, St. Charles County Court). The Court initially denied petitioner's *pro se* motion to vacate on November 25, 2020, and petitioner immediately filed an appeal of the denial. However, on November 25, 2020, the Missouri Public Defender's Office entered their appearance on behalf of petitioner and sought reconsideration of the motion to vacate. The motion to reconsider is set for hearing on March 15, 2021. *Id.* The appeal of the denial of the motion to vacate is currently awaiting ruling of the motion for reconsideration. *See Wolf v. State of Missouri,* No. ED109326 (Mo.Ct.App. 2020).

**Discussion**

Petitioner filed this action pursuant to 28 U.S.C. § 2254 on February 22, 2021. He asserts that he was "kidnapped from United States exclusive custody" and that St. Charles County officials "committed fraud to cover it up." Petitioner asserts ten grounds for relief in this habeas action: (1) violation of the 4th Amendment due to illegal seizure by St. Charles County of his person; (2) violation of the 5th Amendment due process rights for the U.S. Government's failure to provide a timely bond hearing; (3) violation of the 6th Amendment due to petitioner's inability to hire private counsel as a result of his loss of employment due to incarceration; (4) violation of the 8th Amendment due to excessive force at the time of petitioner's arrest; (5) violation of the 14th Amendment due to St. Charles County's illegal seizure of his person; (6) violation of the 6th

8

Amendment due to the "actions of all agencies involved to conspire and work together to. . .cover it up"; (7) violation of the 11th Amendment due to "conspiracy to kidnap and oppress and malicious prosecution"; (8) *Brady* violations, i.e., "St. Charles County failed to mention . . .that they procured my body by fraud"; (9) "constitutional rights violations"; and (10) ineffective assistance of counsel.

Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts provides that a district court shall summarily dismiss a § 2254 petition if it plainly appears that the petitioner is not entitled to relief.

Under 28 U.S.C. § 2254(b)(1):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

>     (A) the applicant has exhausted the remedies available in the courts
>         of the State . . .

In *Duncan v. Walker*, 533 U.S. 167, 178-79 (2001), the United States Supreme Court held that "[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to a state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982)).  The Court further stated that "[t]his requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.'"  *Duncan*, 533 U.S. at 179 (citing *Rose*, 455 U.S. at 518).  "The exhaustion rule promotes comity in that it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Id.* (internal quotations and citations omitted).  As stated by the Court in *O'Sullivan*, 526 U.S. at 844, "[c]omity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates

federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."

Therefore, before federal habeas relief can be granted, a person in state custody is required to exhaust available state remedies. 28 U.S.C. § 2254(b)(1). For a Missouri defendant, a "judgment becomes final for purposes of appeal when the judgment and sentence are entered." *State v. Hotze*, 250 S.W.3d 745, 746 (Mo. Ct. App. 2008) (citing *State v. Welch*, 865 S.W.2d 434, 435 (Mo. Ct. App. 1993)).

In this case, petitioner's post-conviction proceeding is still under review and set for hearing on the motion for reconsideration of the denial of the motion to vacate on March 15, 2021. *Wolf v. State,* No. 2011-CC-1061 (11th Judicial Circuit, St. Charles County Court). Additionally, because petitioner filed an appeal of the denial of the motion to vacate prior to being assigned counsel in his post-conviction proceedings, the appeal of the denial of the motion to vacate has already been filed. *See Wolf v. State of Missouri,* No. ED109326 (Mo.Ct.App. 2020). Thus, the Court of Appeals is holding his appeal in abeyance until such time as the Circuit Court rules on his motion for reconsideration. *Id.*

Given the aforementioned, petitioner's application for relief in this Court is premature. Because petitioner has not yet exhausted his available state remedies, the petition shall be dismissed without prejudice. 28 U.S.C. § 2254(b); Rule 4 of the Rules Governing § 2254 Cases.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner's application for writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED and DISMISSED** for failure to exhaust his pending state court remedies.

**IT IS FURTHER ORDERED** that petitioner's motion for appointment of counsel [Doc. #2] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that a certificate of appealability will not issue.

A separate Order of Dismissal will accompany this Memorandum and Order.

Dated this day 24th of February, 2021.

                                                HENRY EDWARD AUTREY
                                                UNITED STATES DISTRICT JUDGE